NOT DESIGNATED FOR PUBLICATION

No. 119,549

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER VILLELA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed January 10, 2020. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

PER CURIAM: Christopher Villela appeals his sentence and the district court's order revoking his probation. He raises two issues. Villela first contends the district court abused its discretion by revoking his probation and ordering him to serve his underlying prison sentence because it failed to consider his need for drug treatment. Next, Villela argues the district court erred by classifying his 1996 juvenile adjudication for burglary in Texas as a person felony when determining his criminal history score. Finding no error, we affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

Villela pled guilty to possession of marijuana with intent to distribute, possession of methamphetamine, possession of drug paraphernalia with intent to use for distribution, interference with a law enforcement officer, and battery of a law enforcement officer. His plea agreement recommended aggravated but concurrent sentences, and the State agreed not to oppose a dispositional departure to probation. The presentence investigation (PSI) report calculated Villela's criminal history score as B, based in part on classifying a 1996 Texas juvenile adjudication for burglary of a habitation as a person felony. Neither party objected to the criminal history score. The district court sentenced Villela to a controlling sentence of 47 months in prison but granted a dispositional departure and placed Villela on probation for 18 months.

*State's First Motion to Revoke*

Less than a month after sentencing, the State filed its first motion to revoke Villela's probation. In April 2017, Villela admitted he violated his probation by: (1) failing to report to community corrections; (2) failing to live in his reported place of residence; (3) using cocaine; and (4) committing five new crimes—theft of lost or mislaid property, possession of drug paraphernalia, possession of stolen property, two counts of driving while suspended, and driving without insurance.

At the revocation hearing, the district court reinstated and extended Villela's probation, ordered he serve a 30-day jail sanction, and ordered he obtain a drug and alcohol evaluation.

*State's Second Motion to Revoke*

In August 2017, the State filed a second motion to revoke probation. Villela again admitted violating his probation. The admitted violations included more new crimes: (1) fleeing or eluding; (2) theft of property or services; (3) possession of stolen property; (4) driving while suspended; (5) four counts of disobeying traffic controls; (6) a vehicle registration violation; (7) a vehicle identification number violation; (8) two counts of failing to signal; and (9) interference with a law enforcement officer. Villela also admitted he failed to report to community corrections on three occasions; failed to report to treatment as directed; and tested positive for methamphetamine, cocaine, and benzodiazepine.

Villela's probation was again reinstated. He was ordered to serve a 180-day sanction, and the district court recommended he attend inpatient treatment.

*State's Third Motion to Revoke*

The State filed a third motion to revoke Villela's probation in January 2018, alleging that Villela failed to obtain a drug and alcohol assessment as directed and repeatedly failed to report to community corrections. Villela stipulated to these allegations.

At the dispositional hearing, Villela argued that the district court should allow him to remain on probation and obtain inpatient treatment as recommended by a mental health and substance abuse evaluation. The State recommended that Villela's probation be revoked because he failed to perform the basic requirements of his probation. After listening to the arguments of the parties, the district court revoked Villela's probation and imposed the underlying 47-month prison sentence.

Villela's notice of appeal was filed one day out of time. Our court issued a show cause order and ultimately remanded the case to the district court for an evidentiary hearing to determine whether Villela should be allowed an out-of-time appeal under *State v. Ortiz*, 230 Kan. 733, 640 P.3d 1255 (1982). Following the *Ortiz* hearing, the district court ruled that Villela established grounds to file the untimely appeal. The State does not contest the district court's *Ortiz* finding and, therefore, has abandoned any argument challenging the finding. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (noting issue not briefed deemed waived and abandoned). As a result, we consider the merits of Villela's arguments on appeal.

I.      DID THE DISTRICT COURT ERR IN REVOKING VILLELA'S PROBATION?

Villela first contends the district court abused its discretion by revoking his probation by failing to consider his need for drug treatment. Villela argues that no reasonable person would have revoked his probation because allowing him to continue probation and receive inpatient treatment would have been more appropriate given his individual circumstances. We find this argument to be without merit.

Once a probation violation has been established, "the decision to revoke probation rests within the sound discretion of the district court." *State v. Huckey*, 51 Kan. App. 2d 451, 454, 348 P.3d 997, *rev. denied* 302 Kan. 1015 (2015). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Villela bears the burden to show the district court abused its discretion. See *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

The district court's discretion to revoke a defendant's probation is limited by statute. K.S.A. 2018 Supp. 22-3716(c) generally requires the district court to impose

4

intermediate sanctions before ordering the defendant to serve the underlying prison sentence. *Huckey*, 51 Kan. App. 2d at 454. But when a defendant's probation is "originally granted as the result of a dispositional departure," as it was here, the district court has complete discretion to revoke probation without imposing intermediate sanctions. See K.S.A. 2018 Supp. 22-3716(c)(9)(B).

Although not required to do so, the district court imposed intermediate sanctions rather than revoke Villela's probation following the first two revocation hearings. In spite of the opportunities given to him, Villela violated his probation for a third time. In fact, the day following his release from the second intermediate sanction, Villela failed to report to community corrections. And despite Villela's requested opportunities for drug treatment, he failed to timely obtain a drug and alcohol assessment as directed and failed to attend his required treatment.

"Probation from serving a sentence is an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege and not as a matter of right." *State v. Lumley*, 267 Kan. 4, Syl. ¶ 1, 977 P.2d 914 (1999). In revoking Villela's probation, the district court stated, "You know . . . Mr. Villela, you've kind of used up your chances. And that doesn't mean you won't have an opportunity to create a life drug free. I mean, you will, but I think you should serve this sentence." Contrary to Villela's argument, the comments by the district court clearly reflect the trial court's continuing awareness, and consideration, of Villela's drug issues.

Furthermore, in addition to granting the original departure motion, the district court twice declined to revoke Mr. Villela's probation and allowed him the opportunity to remain in the community and address his drug issues. The district court ordered Villela to obtain a drug and alcohol evaluation and recommended inpatient treatment. Yet Villela demonstrated an unwillingness or inability to comply with the conditions of his probation. While Villela may benefit from inpatient treatment, as he argues in his brief,

we find the district court did not abuse its discretion by revoking Villela's probation and ordering him to serve his underlying sentence.

II.    DID THE DISTRICT COURT ERR IN CALCULATING VILLELA'S CRIMINAL HISTORY SCORE?

Villela contends the district court erred when calculating his criminal history score at sentencing by scoring his juvenile adjudication for a Texas burglary as a person felony rather than a nonperson felony. He therefore seeks to be resentenced under a lower criminal history score.

Whether a prior conviction should be classified as a person or nonperson offense involves the interpretation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq. "Interpretation of a statute is a question of law over which appellate courts have unlimited review." *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016).

Under the KSGA, criminal sentences are based on two controlling factors:  the defendant's criminal history and the severity level of the crime committed. K.S.A. 2018 Supp. 21-6804(c). A defendant's prior out-of-state convictions are counted when calculating criminal history score. K.S.A. 2018 Supp. 21-6811(e)(1). Kansas classifies an out-of-state conviction as a person or nonperson offense by referring to the comparable offense under the Kansas Criminal Code. If the Code does not have a comparable offense, the out-of-state conviction is classified as a nonperson crime. K.S.A. 2018 Supp. 21-6811(e)(3).

The KSGA does not define what constitutes a comparable offense. But beginning with *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003), our Supreme Court set forth the test to be applied in determining whether an out-of-state conviction is

6

comparable to an offense under the Kansas Criminal Code: the offenses "need only be comparable, not identical," meaning the Kansas statute that is the "closest approximation" to the out-of-state offense "constitutes the comparable offense." For more than a decade following *Vandervort*, the court continued to define a comparable offense using the closest approximation approach, noting the crimes need only be comparable and not identical. See, e.g., *State v. Murdock*, 299 Kan. 312, 314, 323 P.3d 846 (2014) (*Murdock I*), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015).

However, in 2018 our Supreme Court altered the analysis for determining comparability. Now, for a Kansas crime to be comparable to an out-of-state offense, "the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018).

Relying on *Wetrich*, Villela initially argued, and the State agreed, that under the identical-or-narrower test in *Wetrich*, his Texas burglary was not comparable to a Kansas burglary and therefore it should not have been scored as a person felony. Based upon subsequent Kansas Supreme Court decisions, however, we directed the parties to submit supplemental briefs on the comparability issue. We now briefly review those subsequent Kansas Supreme Court cases and analyze their impact on Villela's appeal.

In *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019) (*Murdock II*), the Kansas Supreme Court clarified:

> "The legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced. At that moment, a pronounced sentence is either legal or illegal according to then-existing law. Therefore, for purposes of a motion to correct an illegal sentence, neither party can avail itself of subsequent changes in the law."

Following *Murdock II*, our Supreme Court explicitly held: "*Wetrich* was a change in the law." *State v. Weber*, 309 Kan. 1203, 1209, 442 P.3d 1044 (2019). And, although a party obtains the benefit of a change in the law during a direct appeal, a party collaterally attacking a sentence is "stuck with the law in effect at the time the sentence was pronounced." *Murdock*, 309 Kan. at 591-92.

Notwithstanding *Murdock II* and *Weber*, Villela advances the following arguments in support of his contention we should still apply *Wetrich* to his case: (1) *Weber* was wrongly decided and the rule announced in *Wetrich* was not a change in the law; (2) the "identical-or-narrower" test in *Wetrich* is constitutionally mandated, and (3) the sentencing court engaged in constitutionally improper judicial fact-finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015).

We find Villela's arguments to be addressed and rejected by our Supreme Court in *State v. Bryant*, No. 118,848, 2019 WL 6334364, at *1-2 (Kan. 2019). In challenging the classification of his Missouri burglaries as person crimes, Bryant argued that his sentence was illegal under *Wetrich* and, like Villela here, raised constitutional challenges to his sentence. We find *Bryant*'s analysis applicable to all of Villela's illegal sentence arguments.

First, the *Bryant* court, after reviewing *Murdock II*, noted the following 2019 amendments to K.S.A. 22-3504:

> "[O]ur Legislature echoed the *Murdock II* holding by amending the illegal sentence
> statute, K.S.A. 2018 Supp. 22-3504(3), to read:
>
> > "'(1) "Illegal sentence" means a sentence: Imposed by a court without
> > jurisdiction; that does not conform to the applicable statutory provision, either in
> > character or punishment; or that is ambiguous with respect to the time and manner in

8

which it is to be served at the time it is pronounced. A sentence is not an "illegal sentence" because of a change in the law that occurs after the sentence is pronounced.

"'(2) "Change in the law" means a statutory change or an opinion by an appellate court of the state of Kansas, unless the opinion is issued while the sentence is pending an appeal from the judgment of conviction.' L. 2019, ch. 59, § 15.

"Our Legislature stated that these amendments were 'procedural in nature' and 'shall be construed and applied retroactively.' L. 2019, ch. 59, § 15. The amendment went into effect on May 23, 2019." *Bryant*, 2019 WL 6334364, at *2.

Then, in rejecting Bryant's claim his sentence was illegal in light of *Wetrich*, our Supreme Court stated:

"This court made the next relevant move, deciding in *State v. Weber*, 309 Kan. 1203, 1209, 442 P.3d 1044 (2019), that '*Wetrich* was a change in the law as contemplated by *Murdock II*' and therefore inapplicable to sentences finalized before *Wetrich* was decided. *Weber*, 309 Kan. at 1209. The *Weber* holding dooms Bryant's *Wetrich* argument." *Bryant*, 2019 WL 6334364, at *2.

Villela's *Wetrich* argument is similarly doomed. Because he was sentenced before *Wetrich* and did not directly appeal his sentence when it was imposed, Villela does not obtain the benefit of the change in law under *Wetrich*.

At the time Villela was sentenced, the law for determining comparability was based on *Vandervort*'s "closest approximation" test and not *Wetrich*'s "identical-or-narrower" analysis. We note that Villela's comparability challenge is based solely on *Wetrich*—he does not argue that his sentence is illegal under the *Vandervort* test. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) ("When a litigant fails to adequately brief an issue it is deemed abandoned."). We nonetheless note that applying *Vandervort*, our review of the applicable Texas and Kansas burglary statutes reveals that

9

the closest approximation to a Texas burglary of a habitation is a Kansas burglary of a dwelling because a "habitation" under Texas law "clearly fits within the Kansas definition of 'dwelling.'" *State v. Mullens*, 51 Kan. App. 2d 1114, 1117, 360 P.3d 1107 (2015).

Finally, our Supreme Court in *Bryant* further directs the outcome of Villela's constitutional challenges to his sentence:

> "Bryant also argues that his sentence is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013); and *Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016). He asserts the district judge unconstitutionally engaged in fact-finding when he designated Bryant's 1981 Missouri second-degree burglaries as person felonies.

> "This court has often reiterated that 'the definition of an illegal sentence does not include a claim that the sentence violates a constitutional provision.' *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016) (*Dickey II*) (quoting *State v. Moncla*, 301 Kan. 549, 553-54, 343 P.3d 1161 [2015]). Under this rule, Bryant cannot use a motion to correct an illegal sentence to argue that his sentence is unconstitutional. *Dickey II*, 305 Kan. at 220." *Bryant*, 2019 WL 6334364, at *2.

Villela's constitutional claims cannot be raised to challenge his sentence here as illegal because, as in *Bryant*, the definition of an illegal sentence does not include a claim that the sentence violates a constitutional provision.

We find no error by the district court in classifying Villela's Texas burglary adjudication as a person felony when calculating his criminal history score.

Affirmed.